## Seyfert's Appeal

.William R. Lessig, Jr., and Stevens & Lee, for appellant.

Alan M. Hawman, Jr., assistant city solicitor, for City of Reading.

SHANAMAN, J., July 16, 1945.—This is an appeal between triennial years, from the refusal of the tax assessor and the board of revision to modify an assess-

ment on appellant's property, from which appellant has since the triennial assessment removed a large hotel building. At the triennial assessment for 1943, 1944, and 1945, the property was assessed by the court on appeal at $40,000. It consisted of an old hotel building with garage, located at 339-345 North Ninth Street, with a frontage of 78 feet 9 ins. on North Ninth Street, and a depth running back half a block to a 68½ feet frontage on Moss Street. The assessor admitted that the hotel building has been demolished. He testified that on September 20, 1944, Dominic Maurer, a contractor, took out the necessary permit; that on October 19, 1944, the witness inspected the property and nothing had been done; that on December 7th the witness observed that some demolition had taken place and considerably more on December 14th. The assessor admitted that on December 17th the hotel building as it then stood was no longer usable for any purpose, much of the building having been torn down, and doors and window trim being removed throughout. Early in 1945 the job was completed and the ground graded off. The garage on Moss Street was left standing. Dominic Maurer, the contractor, testified that on December 31, 1944, the hotel building was down 86%; that on January 15, 1945, the last material had been removed, and that by February 12, 1945, his work had been completed by grading and leveling off the lot and capping the walls. He testified further that on November 1, 1944, all the frames, doors, window trim, radiators, piping and plumbing were out of the building.

The applicable law is section 2506 of the Third Class City Law of June 23, 1931, P. L. 932, 53 PS §12198-2506, as follows:

"In the years between triennial assessments, the said assessor shall . . . (d) Deduct from the value of any property any depreciation caused by destruction, injury, or otherwise, howsoever."

It is plain that sufficient demolition had taken place to justify the property owner's application for modification of assessment. The law does not require total destruction in order to support a reduction of the assessment. Thus, if a house is burned down by fire, the charred walls and partial roof standing after the fire has been extinguished do not relieve the assessor of his duty to reassess in view of the destruction wrought. The assessor testified that in case of demolition he and the board make no adjustment in assessment unless the work be done before November 1st, and that this is the city's practice imposed upon them by the necessity of their having sufficient time to get out the tax bills and frame the budget. Mr. Koch, the assistant tax assessor, testified that if the work had been started before November 1st the city would have made an adjustment and that by December 14, 1944, he knew that considerable demolition had already taken place. He also testified that members of the board of revision had been watching the building, but that the appeal to them was taken too late, namely on or about November 16th or 17th. It is not shown exactly when the board of revision acted, but it is fair to assume that they did not act before December 14, 1944, at which time the assessor inspected the property. The city's contention that a reasonable date must be fixed after which demolition shall not be credited, might in some circumstances conceivably furnish a support for a court's refusal to overrule the action of the board of revision, but is not applicable under the facts of the present case. The demolition took place late in the year, it is true, but nothing in the statute requires it to take place early. The crucial point is that the city authorities knew of it and knew that it was not merely intended to be done but was in course of being done. If the demolition had to some extent lessened the value of the property, the board of revision should have made a reasonable allow-

ance for it. Nevertheless, the city assessor did not consider the current demolition at the time when he assessed the property (N. T. 1), and the board of revision in its turn made no adjustment on appeal to it.

The city contends further that even if the lateness of the demolition did not justify the tax authorities in ignoring it as a factor in assessing the property, the assessment fairly represents the value even after the demolition. This contention the city supports only by the testimony of the assistant assessor, Mr. Koch, whose theory is that in November or December the semi-demolition would fairly have reduced the value from $40,000 to $38,000, but that the clearing away of the debris and the leveling of the ground restored the property to the former value of $40,000. On the other hand the appellant called two real estate agents who valued the property in its state of demolition at $30,000. It appears to us that Mr. Koch failed to give sufficient weight to the fact that the old hotel had brought in some rental ($2,100 annually, N. T. 11). The fair weight of the testimony appears to us to be distinctly in favor of the appellant's contentions. We therefore fix the fair market value at $30,000.

And now, to wit, July 16, 1945, the appeal is sustained and the assessment for 1945 is fixed at $30,000.